cases above discussed are in point. Their holding has never been disturbed by inconsistent statutes or contrary decisions, and I believe them to state the law as it now is. Adams v. Dyer, supra; Waterman v. Haskins, supra.

As heretofore pointed out, the claim of Mr. Bacon as a substantial lienor to have his lien satisfied in full was not defeated by the sale in partition. The priority between the liens was gained by the issuing of the execution to the sheriff (he having proceeded under it with promptness). The partition action was afterward brought, and I take it that subsequent acts of third parties cannot operate to defeat established lien rights. His lien against the share of defendant Fred Hulbert, together with those of the other judgments, was adjudicated in the action and followed the proceeds of that share into the county treasurer's possession. The only duty now resting upon the court is to determine the rank of the respective liens so established and direct payment accordingly. Spring v. Sandford, supra; Treacy v. Ellis, supra; Code Civ. Proc. §§ 1563, 1564.

The moneys heretofore paid into the Seneca county treasury as and for the share of the defendant Fred Hulbert in the proceeds of the sale in this action should be paid over to Mr. Bacon and to the executors of Leonard Story in the order of the preference of their respective liens as above indicated.

Order may be entered accordingly, and, unless agreed upon, may be settled on three days' notice.

Ordered accordingly.

---

(164 App. Div. 89)

## PEOPLE ex rel. NASH v. BOARD OF SUP'RS OF ONONDAGA COUNTY.

(Supreme Court, Appellate Division, Fourth Department. October 21, 1914.)

1. ATTORNEY AND CLIENT (§ 141*)—COMPENSATION OF ATTORNEY—AMOUNT.

An allowance of $1,050 for the services of an attorney for 42 days, devoted to investigation, preparation, and trial of proceedings to remove a sheriff, will be reduced to $840, where it appears that such services, though ably and thoroughly performed, could to a considerable extent have been rendered by a competent clerk.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 347; Dec. Dig. § 141.*]

2. COUNTIES (§ 153½*)—REMOVAL OF OFFICER—ALLOWANCE OF EXPENSES—PAYMENT FROM COUNTY FUNDS.

County Law (Consol. Laws, c. 11) § 240, subd. 16, construed to authorize a county to reimburse individuals for expenses incurred in employing counsel to prosecute successful proceedings for the removal of a sheriff, is not violative of Const. art. 8, § 10, providing that no county shall give money or property in aid of any individual.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 221, 222; Dec. Dig. § 153½.*]

3. COUNTIES (§ 133*)—REMOVAL OF OFFICER—REIMBURSEMENT FOR "REASONABLE" COST AND EXPENSES.

The word "reasonable," as used in County Law, § 240, subd. 16, providing that the reasonable cost and expenses in proceedings for the removal of any county officer shall be county charges, applies not only to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the amount of expenses, but also to the charges preferred, since no expense would be reasonable unless the charges were founded on probable cause.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 200, 201; Dec. Dig. § 133.*

For other definitions, see Words and Phrases, First and Second Series, Reasonable.]

Appeal from Judgment on Report of Referee.

Mandamus by the People, on the relation of John F. Nash, as assignee of A. Herbert Crawford and others, against the Board of Supervisors of the County of Onondaga. From a judgment for relator, respondents appeal. Affirmed on opinion of referee.

The following is the opinion of Irving G. Vann, referee:

In April, 1911, three residents of the county of Onondaga, for convenience called the complainants, presented to the Governor certain charges against Frederick Wyker as sheriff of said county, and asked for his removal from office. Mr. Wyker filed an answer denying the charges, and the issue thus joined was sent to a commissioner, who took the evidence and reported the facts, and upon the evidence thus taken and the report so made the sheriff was removed.

[1] John F. Nash, Esq., a member of the Onondaga bar, was employed by the complainants to prepare the charges, look up the evidence, and try the case before the commissioner. Claiming that they were entitled to reimbursement from the county for the reasonable expenses incurred by them in employing counsel to prepare and prosecute the charges, the complainants assigned their bill, amounting to $1,050, to Mr. Nash, who presented it to the board of supervisors for audit and allowance as a county charge. The board refused to allow any part of the bill, upon the ground that it was not a lawful charge against the county, whereupon a writ of alternative mandamus was issued by the Supreme Court at Special Term, requiring the respondents to audit the bill or show cause in the usual way. The return filed to the writ raised the issue of fact whether the services of Mr. Nash were worth the amount charged and the issue of law whether the bill was a county charge, and those issues were tried before the referee.

The services of Mr. Nash were ably and thoroughly performed, but, being somewhat protracted and continuous, and to some extent such as could have been rendered by a competent clerk, were worth, as I think, differing somewhat from the expert called on either side, the sum of $20 for each of the 42 days devoted to investigation, preparation, and trial, amounting to $840.

[2] The question of law has been ably discussed by counsel and is entitled to serious consideration. By the County Law "the reasonable cost and expenses in proceedings before the Governor for the removal of any county officer, upon charges preferred against him, including the taking and printing of the testimony therein," are made county charges. County Law, § 240, subsec. 16. This provision had already been enacted in substance as early as 1874. Laws 1874, p. 388, c. 323. Our state Constitution provides that "no county * * * shall hereafter give any money or property, * * * to or in aid of any individual, association or corporation. * * *" Article 8, § 10. The question presented in this case is whether the provision quoted from the County Law violates the provision quoted from the Constitution.

There was no contractual relation between the complainants and the county, nor between Mr. Nash and the county. The action of the complainants was purely voluntary, without request from any officer or body, and hence their claim for reimbursement rests wholly on the statute. The manifest object of the Constitution is to prevent the use of public money or property for private purposes, regardless of the form of the gift. If said provision in the County Law authorizes the use of money belonging to a county for a private purpose, it is void as enacted in violation of the Constitution. The question, there-

fore, is whether the expenses of the complainants in prosecuting the sheriff were incurred for a public or private purpose. If they were incurred for a public purpose, they were valid and should be paid; but if they were incurred for a private purpose they were invalid and should not be paid. It seems, therefore, to come down to this as the ultimate question: Is the removal from a county office of an incumbent who is unfit to discharge the duties thereof a county purpose, or a public purpose, so far as the county is concerned?

[3] It is to be observed that the statute does not authorize payment of the reasonable expenses of defending, but only of prosecuting a public officer. The word "reasonable" as thus used does not apply simply to the amount of the expenses, but it applies also to the charges preferred, because no expense would be reasonable unless the charges were founded on probable cause. People ex rel. Smart v. Supervisors of Washington County, 66 App. Div. 66, 71, 72 N. Y. Supp. 568. It might well be held that if the accusation was frivolous, or was not presented in good faith, the expense of prosecution would be in the nature of a gift, and hence not a county charge under any possible view. That question, however, is not now presented, for neither the evidence against the sheriff nor the propriety of his removal are before me, and I am compelled to presume from the record of removal that the charges preferred were substantial, and that the evidence justified the action of the Governor. I am also compelled to presume from said record that the action of Mr. Wyker, not as sheriff, but while he was sheriff, in his relation as an individual to the Onondaga Penitentiary under cover of his brother's name, had deprived the county of a substantial sum of money, to which it was lawfully entitled.

Under these circumstances it may be asked: Was there no public interest involved? Were not the taxpayers interested as such? Was their welfare as members of the municipal corporation, known as the county of Onondaga, not affected by the continuance in office of the sheriff? Must a county submit to spoliation unless some citizens have enough public spirit to institute a prosecution, and if they do so in order to protect the county and promote the public welfare of the county, and their efforts result in the removal of the officer, is it a *gift* of public money in any proper sense to reimburse them for their reasonable expenses incurred in the prosecution? Was the prosecution of the sheriff a county purpose, in the sense of a corporate or governmental purpose, when county funds had been diverted from corporate to private uses? Was there a moral and equitable obligation on the part of the county to pay the reasonable expenses incurred by private citizens for the benefit of the county, to protect its treasury and prevent the waste of its money? These questions answer themselves, as it appears to me.

The courts have found difficulty in defining a city or county purpose, and have usually proceeded by the process of exclusion. Thus in a noted case, that is frequently cited, Judge Folger said: "When we come to ask, in any case, what is a public purpose, the answer is not always ready, nor easily to be found. It is to be conceded that no pinched or meager sense may be put upon the words, and that if the purpose designated by the Legislature lies so near the border line as that it may be doubtful on which side of it it is domiciled, the courts may not set their judgment against that of the lawmaker." After referring to certain cases the learned judge continued: "It has been accepted in this state as a binding adjudication that the Legislature may tax, or delegate to a political division of the state the power to tax, or may compel that division to tax, to raise money to pay a legal, equitable, or moral claim, or to do that toward an individual which proper and expected sense of gratitude for public service ought to prompt, or a feeling of charity (which in a legal sense, is, perhaps, as used here, no other than a moral obligation) urge. It may also be conceded that that is a public purpose from the attainment of which will flow some benefit or convenience to the public, whether of the whole commonwealth or of a circumscribed community. In this latter case, however, the benefit or convenience must be direct and immediate from the purpose, and not collateral, remote, or consequential. It must be a benefit or convenience which each citizen of the community affected may lay his own hand to in his own right, and take unto his own use at his own

option, upon the same reasonable terms and conditions as any other citizen thereof. He may not be made to depend for. it on the spontaneous action of others, or to receive it in uncertain degree or manner or roundabout way, or hampered with discriminating distinctions and conditions." Weismer v. Village of Douglas, 64 N. Y. 91–100 (21 Am. Rep. 586).

I find no case decided by the court of last resort that is strictly analogous to the one in hand, but there are cases which bear directly on the principle involved. Thus in Cayuga County v. State, 153 N. Y. 279, 47 N. E. 288, it was held that a statute authorizing the Board of Claims to audit the claim of Cayuga county for moneys previously expended in the trial of convicts at Auburn Prison, for crimes committed in the prison, was not an infraction of the section of the Constitution under consideration, which contains the same prohibition against the gift of moneys belonging to the state as in the case of a county or city. The court, through Chief Judge Andrews, said: "The provision for reimbursement of the county was not a gift of money of the state, but was intended as a discharge of an equitable obligation, although unenforceable, which in the judgment of the Legislature rested upon the state." Cayuga Co. v. State, 153 N. Y. 279–293, 47 N. E. 288, 292.

In the matter of Chapman v. City of New York, 168 N. Y. 80, 61 N. E. 108, 56 L R. A. 846, 85 Am. St. Rep. 661, which is relied upon by the respondents, the court held that payment from the funds of a county or city of the expenses incurred by a police officer in successfully *defending* charges preferred against him for official misconduct was virtually a gift, and not a city or county purpose, on the ground that there was no moral obligation on the part of either to pay the claim. The court said: "For time out of mind, in all governments where the common law prevails, a person prosecuted for crime has been compelled to pay his own expenses when he had the means of doing so. People ex rel. Brown v. Board of Supervisors, Onondaga Co., 4 N. Y. Cr. R. 102, affirmed 102 N. Y. 691. If without means, the counsel assigned by the court served without pay, except under a recent statute a moderate allowance may be made in a capital case. Laws 1897, c. 427; Code Cr. Proc. § 308. This exception is founded on the theory that a fair trial cannot be had without the aid of counsel, and that money paid from public funds to counsel appointed by the court for a prisoner without means *is paid for a public purpose.* The proceeding instituted against the appellant was not a prosecution for crime, but to discipline or remove him for misconduct as a public officer. There was no authority, statutory or otherwise, to appoint counsel to defend him, and no attempt was made to do so. It was necessary for him to employ and pay his own counsel, as has always been the case with others similarly situated. Payment of his expenses by the public would be a mere gratuity, and without the sanction of custom or precedent. There was no moral obligation on the part of the respondent to discharge such a claim, for it had no foundation in natural or legal right. It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. When a citizen accepts a public office, he assumes the risk of defending himself against unfounded accusations at his own expense. Whoever lives in a country governed by law assumes the risk of having to defend himself without aid from the public, against even unjust attempts to enforce the law, the same as he assumes the burden of taxation."

Thus it was held that payment under those circumstances would be a gratuity because there was no moral obligation on the part of the city of New York to defend a police officer charged with official misconduct. The court, however, distinctly said, by way of illustration, for the point was not involved, that money paid from public funds to counsel appointed by the court for a prisoner without means, when charged with crime, is paid for a public purpose. This principle is recognized by many cases, and it is the universal practice of the Supreme Court at Trial Terms to appoint counsel to defend a poor prisoner charged with a capital offense and to direct payment for their services under section 308 of the Code of Criminal Procedure. The same practice prevails in the Court of Appeals with reference to appeals in such cases, and scarcely a term passes without the exercise of the power by

that court. People v. Barone, 161 N. Y. 475–477, 55 N. E. 1091; People v. Ferraro, 162 N. Y. 545, 57 N. E. 167. Thus the Court of Appeals has indirectly, in a multitude of cases, held that a statute authorizing the payment of counsel assigned by the court to defend in capital cases was valid and enforceable, and the court has itself repeatedly enforced it. The distinction between those cases and the Chapman Case is obvious, for in the latter the statute authorized payment for defending a person not charged with crime, but for misconduct as a police officer, while in the former the statute authorized payment to counsel actually assigned by the court to defend a person charged with the gravest crime known to the law. The court recognized the validity of the statute in another case, when it said through Chief Judge Parker: "The state attempts to safeguard the life and liberty of citizens, and as one of the steps in that direction secures to them, if under indictment, the services of counsel learned in the law to conduct their defense; and when the crime charged is punishable by death, the state provides for the payment of counsel assigned to such duty." People v. Triola, 175 N. Y. 407, 67 N. E. 968.

There is a well-considered case in the Supreme Court which is strictly analogous, as will be seen when the facts are stated. In 1898, certain taxpayers of the county of Washington formed an unincorporated association for the purpose of investigating the bills of county officials and removing officers who presented fraudulent claims. The president of the association preferred charges against the sheriff of the county, alleging misconduct on his part in presenting fraudulent accounts to the board of supervisors, whereupon the sheriff resigned. The supervisors refused to audit the claim presented by the president for the reasonable expenses incurred in the employment of counsel, and the court at Special Term sustained their action. Upon appeal to the Appellate Division the judgment of the Special Term was unanimously reversed, and it was held that under the County Law the claim was a county charge. notwithstanding the fact that the president appeared as an individual complainant in the proceedings before the Governor. The court, through Presiding Justice Smith, referring to the provision now in question, said: "This legislation was re-enacted in the Laws of 1892 with the amendment providing that 'the reasonable cost and expenses' in such a proceeding should be a charge against the county. This legislation, in view of the allowance made in the very enactment in which it is first found, would seem to me to negative the rule of law as held by the learned trial judge. * * * A private citizen clearly had the right to make and prosecute charges before the Governor. The statute does not limit the right to reimbursement to counsel employed by the Governor or employed by the Attorney General. For the court to add to the statute a restriction not included by the Legislature would be unwarranted judicial legislation. Nor does the fact that the county might be subjected to numerous bills of expenses warrant the court in placing in the statute a limitation which the Legislature has omitted. It is probable that the court would interpret the reasonable costs and expenses of a proceeding before the Governor as such costs as are incurred in a proceeding instituted upon reasonable grounds. With that interpretation there could be no fear of an excessive liability to the county, and the same policy of the law, which protects a prosecutor of crime where there is probable cause to believe in the commission of the crime, might be urged to encourage one making charges against a public officer, where there is probable cause for belief in his guilt. * * * We are therefore of opinion that for such expenses and disbursements as were reasonably made by the relator in the prosecution before the Governor, after the filing of charges, the relator is entitled to reimbursement." People ex rel. Smart v. Board of Supervisors, 66 App. Div. 66, 71, 72 N. Y. Supp. 568, 572.

I am bound to follow this case, which is controlling upon substantially every point raised by the appellant. It is therefore my duty to recommend that a peremptory writ of mandamus be issued by the Supreme Court commanding the appellant to audit the claim of the relator.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Herbert L. Smith, of Syracuse (Ray B. Smith, of Syracuse, of counsel), for appellants.

Nash, Britcher & Eckel, of Syracuse (A. Lee Olmsted, of Syracuse, of counsel), for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Hon. Irving G. Vann, referee.

<hr/>

### GREMS v. PARSONS et al.

(Supreme Court, Trial Term, Madison County. November 2, 1914.)

1. WILLS (§ 439\*)—CONSTRUCTION—INTENT OF TESTATOR.
    Where the language of a will is plain, effect must be given to its import; but when ambiguous the intention of the testator, as drawn from the whole will and the surrounding circumstances, governs.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. § 439.\*]

2. EXECUTORS AND ADMINISTRATORS (§ 138\*)—POWER OF EXECUTORS—SALE OF REAL PROPERTY.
    Where a will vested in the executrix power to sell any real property and made her trustee thereof, the power of sale should not be exercised, there being sufficient personalty to discharge all debts and the expenses of administration, for the only purpose would be to give the executrix commissions.
    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 560–566, 568–575; Dec. Dig. § 138.\*]

3. WILLS (§ 634\*)—CONSTRUCTION—INTEREST DEVISED.
    Where a testator devised land to his daughters for life, with remainder to their heirs, the heirs of the life tenants in being at the death of the testator take the fee, their interest being vested.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.\*]

4. WILLS (§ 634\*)—CONSTRUCTION—INTEREST DEVISED.
    Where a testator devised land to his daughter for life, and provided that at her death he gave the land to his heirs, the will reciting that it was the purpose of the testator that his estate should not pass from his heirs, and that his daughter was without issue, the daughter takes a life estate; the fee going to those heirs of the testator in being at the time of the daughter's death and not vesting until then.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.\*]

5. WILLS (§ 601\*)—CONSTRUCTION—INTEREST DEVISED.
    Where a testator devised property absolutely by one clause of his will, he cannot, by a subsequent clause, impose conditions upon alienation of the property.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1340–1350, 1608; Dec. Dig. § 601.\*]

6. TRUSTS (§ 25\*)—CREATION—STATUTE.
    To create a valid trust it is not necessary to follow the words of Real Property Law (Consol. Laws, c. 50) § 96, which defines the purposes for which an express trust may be created.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 34–37; Dec. Dig. § 25.\*]

<hr/>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes